The next case today, number 231914, Orlando Gonzalez Tomasini v. David Steiner, et al. Will counsel for appellant please come up and introduce yourself on the record to begin. Good morning, your honors. Carlos Sanchez on behalf of plaintiff appellant Orlando Gonzalez. Your honors, I would like to reserve two minutes for rebuttal. You may. Your honors, if you start with the wrong facts, you're going to get the wrong results. And this is what happened in this case. The district court received an ex parte motion that had three incorrect facts about the evidence in this case, which is the recording and the transcripts. And those facts were as follows. The- I understand this, but I guess so that leads to there never should have been a hearing. Are you aware of any case where a court of appeals has ever said the error was to hold a hearing? I know sometimes the error is not to hold a hearing, but I'm not aware of any case where the error is to actually hold a hearing. Because that's where the facts are laid out. So if you had a hearing because the facts weren't fully correct, but then you have the hearing, it doesn't seem to me anyone is harmed by that. Your honor, respectfully we believe that that is important because the facts that were told to the court to hold the hearing were really misrepresentations. The court was told that the phone call on July 19th was made by Orlando Gonzalez, suggesting some sort of- But didn't that come out at the hearing? That the fact that it was denied that your client initiated that phone call, and that in fact she initiated the phone call, didn't that come out at the hearing? It did come out at the hearing, but here's the problem with, and to answer the judge's questions, I can't think of a case, but- Let me just see. Misconduct against the government was not alleged or developed, that they did that on purpose. So at best, what you have are misunderstandings of, I'll just accept, misunderstanding of the facts at this very preliminary time that leads to a hearing. And then as Judge Thompson points out, everyone gets to say whatever they want at the hearing, and then the judge decides what actually happened. Where's the harm in that? Well, the harm is that there was no, the harm is that the threshold to hold an evidentiary hearing, the threshold to show that there was clear and convincing evidence, or a showing that the client- What's the prejudice in holding the hearing if you've got a chance to air everybody's version of the facts and let the court decide what happened? So the prejudice lies in that at the hearing, the judge allowed all these other irrelevant evidence to come in, including about the cases that Ms. Sarri had filed, the complaints that she had filed, the criminal complaints in Miami, Florida, in Virginia, in Puerto Rico, and which were never, they never went forward. But weren't you able to bring out that they had been dismissed everywhere, at least at that time, except in Puerto Rico? I will say, yes, that came out, but from there, you can draw some inferences, Your Honor. I mean, here's a person filing criminal charges against Mr. Gonzalez in three different jurisdictions, and none of those jurisdictions, believe her, none of those jurisdictions actually charged Mr. Gonzalez, which is kind of unusual, particularly since she was searching to see where she could land some sort of a charge. And if you look at the opinion, the judge kind of mentions those charges as if they were relevant, Your Honor, and they really weren't. And Your Honor, again, when the judge was told in the phone call that Mr. Gonzalez was using sophisticated means to tell Mr. Isari how to avoid a subpoena, that was a misrepresentation. At the hearing, the phone call is played, is it not? It was played and- We all get to hear it. I understand the argument that could be made that there's some ambiguity in the call. But the judge's jobs are to make determinations on what happened. The judge hears the ambiguity surrounded by all of the facts that he hears, and then he makes a ruling. And it's a tough ruling, but it was all laid out, wasn't it? So again, what are you trying to tell us? If you're not alleging misconduct by the government, which I don't see alleged, then what are you telling us didn't happen correctly here? So, Your Honor, first of all, if you look at the transcript of the phone call, the judge's findings are clear error based on what he concludes. The judge never takes into account that at no point was, during that phone call, was Mr. Gonzalez suggesting to Ms. Isari that she should avoid appearing, that she should destruct evidence. He was not trying to intimidate her. The evidence shows that he brought this subject up himself several times, right? Well, Your Honor, that's- In several conversations with his ex-wife, is that correct? The evidence shows that she was telling him that she was not going to show up, and she was telling the social worker- Counsel, let me try again. Is it correct that the plaintiff, Mr. Gonzalez-Tomasini, in several conversations brought up with his ex-wife the subject of her testimony for the defense in this civil case? So, Your Honor, in the July- That is a yes or no question, Counsel. So, the answer would be the only record of him bringing it up is on July 19th, Your Honor. There's no other record that he's bringing this up. Counsel, we have limited time. We've read your briefs. What is the legitimate, non-coercive, or intimidating reason for him to bring up that subject? Your Honor, because she was telling him that she did not want to come, and as was shown at the hearing, and this is actually in the opinion, Mr. Gonzalez was still in love with Ms. Irizarry, and he wanted to reconcile with her. So, this is an effort at reconciliation? It was an effort of reconciliation. Even if you listen to the tone of Mr. Gonzalez in the recording- Your point here is very interesting. Do you think, as an appellate court, we should listen to that recording and reach a different conclusion based on tones of voice than the judge who heard the evidence? Your Honor, I think that would be one factor that you could hold to determine that the judge's findings of fact are clear error. Certainly, that would be one factor. The social worker testified to multiple pre-July 19th conversations in which he was telling the social worker that part of the deal for the custody agreement was going to be that she not testify. Yes, she actually, I believe, testified twice, that he said that twice, Your Honor, and that came out in the hearing. It's a very peculiar custody term about how someone's going to testify in a non-child related case? I'm sorry, can- Would you agree that that's an odd term in a custody agreement about where a child is going to live to have some provision about how somebody's going to behave in some civil case related to their employment? It's an idiotic proposition, Your Honor, and that's why- why didn't the social worker actually say something about it? Because all she said was, well, talk to your attorney. That's what she said. She didn't say, you know, you can't do that, that is wrong. And Mr. Gonzalez was lured into believing that Ms. Irisari wanted to do all of this because he wanted to get back with her, Your Honor. And, Your Honor, there's no evidence here. Ms. Irisari is a very capable and vocal person that at no point before July 19th, she reported that Mr. Gonzalez was trying to influence her, that was trying to intimidate her, that made any threats against her, and I think that's- I don't think it's those things. I think it's influence. It's not threats, or at least physical harm threats. But they have a dispute that's clearly very important to her and it's becoming a term of that turning out favorable to her that she will do things to help him that are not to testify. And they are going to actually document that in an agreement. Now, that does seem a little interesting and unusual to me, but there was testimony about it. It's confirmed by the July 19th call when he says, I'm going to have to go to the lawyers if you're kind of changing the deal here. And the magistrate judge has to make a decision about all of that, and it was adverse to your client. And I guess it goes to Judge Hamilton's question. It seems like it was a contentious hearing. It seems like you had arguments, but you lost them. And it's very hard for us to see what we should do about that now. Well, Your Honor, I believe that you should actually look at, respectfully, the transcript itself. Because it actually puts into question some of the findings of the judge. First, the transcript starts, she starts recording after she has been talking to Mr. Gonzalez, Your Honor. And she's actually lying in the transcript. She's actually telling him she's... What's the basis for us to write an opinion that says, reliance on the social worker's testimony, an independent third party who says, I was told by Gonzalez multiple times that this was going to be a term of the custody agreement, that that should be set aside. What is your argument for that? Your Honor, I believe, again, it goes to the way this hearing was convened, it's implausible. The things that are here are implausible. That would be our argument, and they're clearer in that sense, Your Honor. Can I move on to the sanction? Yes, Your Honor. You've argued that dismissal here was an excessive sanction. The kind of conduct that the magistrate found here is very difficult to detect and even harder to prove. What lighter sanction do you think would have been appropriate for punishment and deterrent purposes? Well, Your Honor, to answer your question, simply a protective order prohibiting Mr. Gonzalez from talking to Ms. Irizarry. He could have done a number of things. He could have provided an adverse instruction. He could have imposed a monetary fine. Mr. Gonzalez was trying to get a judgment, so he had a number of other alternatives that... He surely did, but it's an abuse of discretion standard, and I think what Judge Hamilton is pointing out, which, at least to me, has a lot of currency, is this notion that it's hard to figure out when someone's witness tampering because they do it secretly. And this case happened to be the one where this woman decided to record it, so the thing gets unveiled. So you have the rare case where this is actually found, and the point of the extreme sanction or the very serious sanction is to make the point to everyone, if you do this, your case will end because it is a fraud on the court. And so that's what he found, and again, under an abuse of discretion standard, that strikes me as logical. He could have done many other things. I follow you, but he chose that one, and for that reason, and why is that abusive of his authority? Your Honor, it's also an abuse of discretion because Ms. Irizarry would have testified in any event, and Ms. Irizarry's testimony did not really, would have not really impacted some of the claims that survived, including retaliation on the Rehab Act, the interference with the FMLA Act, so none of that would have been impacted by Ms. Irizarry's alleged testimony, Your Honor. Thank you, Counsel. Thank you. Thank you, Counsel. Counsel for Appoli, please come up and introduce yourself on the record to begin. Good morning, Your Honor. May it please the Court, Assistant United States Attorney Denise Longo-Quinones for the United States Postal Service, the Appoli in this matter. This is a case where the Court should affirm the District Court's determination. The District Court sat, as the Court has indicated, in a three-day evidentiary hearing where an overwhelming amount of evidence was presented about plaintiffs' intentional tampering with the testimony of Juliet Irizarry. And that determination is a determination that led to the conclusion that dismissal is the only appropriate remedy because of how unconscionable the conduct was. In this particular case, this is a case where witness tampering, which has been recognized as one of the most egregious abuses of judicial process, warrants dismissal. Why does it warrant dismissal? In this case, Mr. Gonzalez-Tomasini was using Juliet Irizarry's interest in resolving what had been an ongoing acrimonious custody battle to try to corruptly persuade her to make herself unavailable to trial. The important things about the facts that came out at this hearing was that, one, this was done at the eve of trial. This case had been going through discovery proceedings for more than three years. It was originally filed in 2018. Ms. Juliet Irizarry herself was initially a plaintiff in the case. What are we to make of the multiple criminal charges that Ms. Irizarry filed against Mr. Gonzalez-Tomasini that never went anywhere? It sounds like both of them were engaged in some egregious custody related conduct. They were engaged in that egregious conduct and clearly one of the things is that those charges were filed in three different jurisdictions because she was with her stepdaughter at those jurisdictions and ultimately they came to Puerto Rico because the incident happened in Puerto Rico. She first initially tried to file them in Florida. They told them it didn't happen in Florida. They don't have jurisdiction. Then she tried to file them in Virginia where they moved. They said the same thing. That's unrelated to us because there's conduct not here. Then she came and filed them in Puerto Rico. They were ongoing in Puerto Rico during the term of the fight. The fact that those things were filed and whether they're credible or not credible goes to the credibility of Juliet Irizarry as a witness. That was fully fleshed out at the hearing before the magistrate before Judge Lopez. He had an opportunity to listen to Juliet Irizarry's testimony to listen to all of the evidence that was presented to corroborate her testimony about the witness tampering and make the credibility assessment. With regards to that, Your Honor, in this case what we request is that the court would pursuant to Rule 52 give the due deference to the trial court with regards to the adjudication of credibility in this case. In this case, the court, after listening to three witnesses, and very important one of the important things about this hearing that we would like to bring to the court's attention the hearing starts with the testimony by Orlando Gonzalez Tomassini, the plaintiff. He takes the stand and he openly and notoriously denies having made any type of  At the time that he's testifying, he is unaware that social worker Angelica Alvira has been subpoenaed to come to testify and that there are records prepared and maintained by social worker Alvira that will show later on in the hearing, three days later, that he had conditioned the establishment of a joint custody agreement on not testifying in this case. So at the time that he takes the stand on August 1st and starts testifying and denies having engaged in any of the conduct that later is revealed to have constituted the witness tampering, he was not aware of the existence of social worker Alvira's records and or what her testimony would be. Then we go to the hearing and at the hearing, all of that evidence is brought in. And what is the evidence that's brought in? And it's very important because one of the findings by the court in this case is that this was not an instance of witness tampering on July 19th the day that we have the recording. That it was itself not a single conversation, but a persistent effort that was discovered on July 19th when the recording was brought to the attention of the U.S. Postal Service Counsel by Juliet Irizarri. And furthermore it's a kind of case where Ms. Alvira testified that Gonzalez was adamant about the fact that to have a deal on the custody matter Ms. Irizarri would have to desist from testifying in this case. So this is not a case that has to do with Juliet Irizarri's credibility or her story. Counsel in his brief spends a lot of time and in the reply brief saying that this is a case about a scorned wife that's coming in and making up stories to try to pursue Gonzalez Irizarri. That's not this case. That's a different case. This is a case where Juliet Irizarri produces a recording that the plaintiff admits it's himself speaking we bring the recording before the court and we flesh out the testimony of three witnesses, all of whom admit and testify that Gonzalez Tomasini was making this offer to Irizarri as a way to induce her to make herself unavailable. And I want to point to the court with regards to the recording itself, and that would be an appellate addendum at page two that he himself says in the first line, I'm asking you because since I mentioned it for the agreement, then again I mentioned that as part of the agreement. It is undisputed in this case that it was Gonzalez Tomasini who brought up the condition of Ms. Juliet Irizarri not testifying in the federal case as a condition to enter into that joint custody agreement. So he's using that joint custody agreement, a different legal proceeding that should be guarded by concepts of the benefit of the child the decisions about custody are not to be ruled by whether or not somebody comes and testifies in a federal civil proceeding should be ruled and controlled by the benefit of the child. He's using Ms. Juliet Irizarri's interest in retaining custody of her child. The testimony showed that Ms. Juliet Irizarri had sole custody of the child and in the custody battle Gonzalez Tomasini was seeking sole custody so it was really two individuals that had been fighting on out of acrimonious matter for two years for sole custody of the child. Ms. Juliet Irizarri testified that she was in fear of losing the custody of her seven-year-old child in this case. So as the court decided in its ruling in this case Gonzalez Tomasini was offering to Juliet Irizarri something more valuable than money in order to obtain a resolution that would fabricate the evidence in this case and that's why dismissal is the appropriate sanction because in this case Gonzalez Tomasini was using that offer of joint custody agreement to fabricate a case before the court and we submit to you that he admits that before the trial was prepared the Postal Service had identified only three witnesses two supervisors and Juliet Irizarri and he also admits in the briefing and the plaintiff admitted also on the stand that he knew that Juliet Irizarri would come into court in the federal case and would testify that he was faking the injuries that were the underlying injuries for his claim of disability that would be required to have a rehabilitation claim and that he was faking the emotional damages that were caused to him by any of these claims because he was not taking the medication the mental health medication that had been prescribed to him and she was an essential witness for this evidence because she had found those prescription drugs in the closet of the residential home and had taken photos of it and testified credibly as to what they were so the fact that she was an essential witness that went to the crux of the matter is why Gonzalez Tomasini goes out of his way to engage into a scheme of witness tampering that starts sometime in May of 2019 and continues up to the eve of trial and we submit to you that that scheme was actually being successful until it was discovered on July 19th the record shows that Juliet Irizarri took steps to close out the sexual abuse investigation at the local court by procuring the psychological report that was entered into evidence and that was sent to the prosecutors here in Puerto Rico in order to close out that case she even sent a copy of that report to social worker Alvira to show her I'm complying with his conditions she also testified and it was also shown at the hearing that she was also complying by failing to respond to the telephone calls from the postal service trying to procure her from trial in order for us to get her to appear before trial we had to send a U.S. Marshal and have her served in Virginia for her to return our calls and finally start participating in the proceedings. She testified that she had been avoiding those calls intentionally because she did not want to participate in the federal case because she did want to procure that joint custody agreement so this is the particular case that is so egregious that dismissal is the only solution and unlike as was argued by brother counsel this is not a case where her testimony only goes to the rehab count. Her testimony goes to the totality of the remedy that the plaintiff would get because it would also go to his emotional damages which would be the only damages that would be recoverable under either the FMLA or the ADA so in this case her testimony goes to everything and we submit that the courts that have imposed dismissal as a sanction, one it has generally been imposed in cases of witness tampering because of the recognition that witness tampering is the type of egregious conduct that defiles our judicial system it is really the type of conduct that warrants the exercise of the courts inherent powers in closing the doors to the courtroom to somebody that has the goal to do that. We must also mention to the courts attention that in this case and brother counsel complains in the Gonzales Tomasini's prior prosecution for witness tampering in which he was acquitted but that information is very important because it goes to his knowledge of the fact that witness tampering is inappropriate and it highlights the difference between the conversations or information that we have as to how he spoke to Juliet Irizarry and the revealing conversations of how he spoke to social worker Alvira because I think that that is one of the things very important in this case. The court finds that whenever he spoke to Juliet Irizarry he used a coded language in the WhatsApp application conversation of May of 2012 he says there are obstacles that Juliet needs to fix. She responds yeah those obstacles are the civil case the federal civil case and the social work the sexual abuse case I'm taking care of it we can go ahead and have a meeting. He doesn't object to her interpretation and that's in May of 2022 but then when he speaks to Alvira who is a person that he does not expect to be part of the federal proceedings with whom he does not have to use coded language because he's not trying to corruptly persuade her he's trying to corruptly persuade Juliet with Juliet he's cryptic as the court finds with Juliet the court finds that he is veiled and uses insinuation it's true in the he asks questions instead of giving orders because he knows that it's inappropriate furthermore he admits as much when he testifies before the court so it's clear that he knows that witness tampering is inappropriate but he did not expect social worker Alvira to be a witness in this case he did not expect social worker Alvira and what he said to Alvira to come before this court and what he said to social worker Alvira is just unequivocal that it's an attempt to corruptly persuade and I just have to read it because it's evidence that's irrefutable and which let me point out brother counsel it's never argued the credibility of Alvira is never challenged the veracity of the information there contained is never challenged so the courts determination in this case is plausible under rule 52 the court should respect it and give it the value that it does and in light of the unconscionable conduct itself the court should adopt the court's determination that dismissal is the only appropriate sanction I would like to point out the case of the most akin case in our arguments is the one of Kidos versus Superiorist Building Maintenance and I would like to bring it out because that's a case where there's also a recording of the witness tampering going on and we submit that if there is a case that warrants dismissal because of how unconscionable the conduct is and the intent to defile our judicial system this is the factual pattern that reaches that level. What was the name of that case again? Kidos versus Superior Building Maintenance it's a southern district of Florida from 2008 in that case it's similar to this case because there is a recording but the testimony that was elicited was that it was an offer for money I think they were offering only a thousand dollars for fabricated testimony but the they used the word cheese they used coded language just as in this case and in Kidos there's a sign that says just like in the drug cases the fact that you use coded language the fact that you use veiled threats shouldn't release you from the responsibility of what you're doing and in this case the record is very clear Gonzales Tomasini was fully aware that what he was doing was inappropriate and that it was an attempt to subvert the system Thank you Thank you Counsel Attorney Sanchez LaCosta you have a two minute rebuttal Your Honors the relationship between Mr. Gonzales and Mr. Erizarri is very    and this is on the record Mr. Erizarri invited him to her son's birthday at her home if you listen to the recording they are talking normally Mr. Erizarri sounds confused and I do agree that the testimony of social worker Alvira is actually important because it actually supports what Mr. Gonzales has been saying Ms. Alvira was asked if what Mr. Gonzales and this is on the record what Mr. Gonzales said that Julieta Erizarri had been mentioning to the social worker and this is on the transcript paragraph six that you weren't coming to the federal case nor for the criminal case. You had mentioned that to her yes? And Ms. Alvira said yes Ms. Alvira was getting this information from Ms. Erizarri not from Mr. Gonzales. Mr. Gonzales undeniably believed that what Mr. Ms. Erizarri was saying was part of his attempt to reconcile with her so that's why he said oh let's put it in the agreement but at no point was he the one who originated this conditions. This was all Ms. Erizarri Ms. Erizarri is again a very vocal person. Why didn't Ms. Erizarri, she was being threatened in May Why was putting it in an agreement relevant to reconciliation? I don't understand that Because in his idiotic mind it would show that she wanted to get back with him and he was actually, this is on the record he was planning to move to Virginia so they could have joint custody. But Ms. Erizarri never wanted joint custody in this case Thank you Thank you counsel that concludes arguments in this case